**BEFORE THE UNITED STATES
JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: TARGET CORPORATION CUSTOMER DATA SECURITY BREACH LITIGATION | MDL No. 2522 |

**RESPONSE OF PLAINTIFF PUTNAM BANK TO THE MOTIONS FOR TRANSFER
AND CENTRALIZATION OF ACTIONS PURSUANT TO 28 U.S.C. §1407**

**I.     PRELIMINARY STATEMENT**

Putnam Bank ("Putnam"), plaintiff in the Related Action *Putnam Bank v. Target Corporation*, No. 0:14-cv-00121-PAM-JJK (D. Minn.) (*see* ECF No. 78), respectfully submits this response, pursuant to JPML Rule of Procedure 6.2(e), in support of the motion for transfer of the Related Actions to the District of Minnesota for coordinated proceedings.  Putnam supports the motion of the *Ashenfarb* plaintiffs for transfer of the actions to the District of Minnesota, pursuant to 28 U.S.C. §1407, for coordinated pretrial proceedings (ECF No. 19) and opposes the motion of Ann Michael Lagarde to transfer the Related Actions to the Middle District of Louisiana and the motion of the *Rothschild* plaintiffs to transfer the Related Actions to the District of Utah (ECF Nos. 1 and 4).

To Putnam's knowledge, there are presently more than 60 class actions pending on behalf of classes of consumers and financial institutions (collectively, the "Related Actions") in over 30 district courts arising from the massive data security breach at defendant Target Corporation's ("Target") stores - the largest retail data theft in U.S. history.  Putnam is a federally-chartered community bank headquartered in Putnam, Connecticut.  Putnam filed the first action in the District of Minnesota on behalf of a class of financial institutions damaged from Target's data breaches.

Putnam respectfully submits that, with respect to the Related Actions, the statutory prerequisites of §1407(a) have been satisfied and the Related Actions should be transferred to a single judicial district for coordination of pre-trial proceedings.  Putnam and other financial institutions have suffered substantial damages as a result of Target's data breach with respect to personal and financial information of customers who used debit or credit cards at Target's retail stores.  Putnam, as well as other financial institutions, will play a central role among the Related Actions brought against Target based on the security breach, and, as such Putnam has a vested interest in the transfer of the Related Actions to the venue best suited for the efficient and effective conduct of the coordinated litigation.

Putnam submits that all relevant factors support transfer of the Related Actions to the District of Minnesota as the most appropriate forum as it is where: 1) Target is headquartered; 2) Target's documents and witnesses will be located; 3) the greatest number of actions – at least 15 – have been filed; 4) favorable docket conditions exist; and 5) an experienced jurist, the Honorable Paul A. Magnuson, is currently presiding over the Related Actions.

## II.     ARGUMENT

### A. The Related Actions and Any Tag-Along Actions Are Appropriate for Centralization and Transfer Pursuant to 28 U.S.C. §1407(a)

Centralization and transfer are permitted if civil actions pending in different districts "involv[e] one or more common questions of act" and this Panel determines that transfer will further "the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. §1407(a). "The objective of transfer is to eliminate duplication in discovery, avoid conflicting rulings and schedules, reduce litigation cost, and save the time and effort of the parties, the attorneys, the witnesses, and the courts." MANUAL FOR COMPLEX LITIGATION, §20.131 (4th Ed. 2004). Transfer and centralization for pretrial proceedings would achieve those objectives in the present litigation, and are therefore appropriate here.

#### 1. The Related Actions Involve One or More Common Questions of Fact

Centralization is appropriate here as the Related Actions are based upon the same facts concerning the Target data breaches. The factual questions common to the financial institution cases include:

i.  whether Target failed to provide adequate security and/or protection for its computer systems containing customers' financial and personal data;

2

    ii.    whether Target negligently misrepresented that it did not retain customer financial information and negligently represented that it provided security as to its computer systems to prevent intrusions;

    iii.    whether Target's conduct (action or inaction) resulted in the unauthorized breach of its computer systems containing customers' financial and personal data;

    iv.    whether Target knew or should have known of the vulnerability of its computer systems to breach;

    v.    whether Target engaged in unfair and deceptive acts or practices as set forth in Minn. Stat. Ann. §325F.69 Subdiv. 1; and

    vi.    whether Target violated Minn. Stat. Ann. §325E.64.

Each of the Related Actions concerns the same Defendant –Target – and the same conduct, arises from the same events, and each of the financial institution actions concerns the same proposed classes. Thus, the "common questions of fact" criterion is satisfied pursuant to §1407(a). *See In re Bausch & Lomb, Inc. Contact Lens Solution Prods. Liab. Litig.*, 444 F. Supp. 2d 1336, 1338 (J.P.M.L. 2006) (centralizing cases that shared factual allegations).

### 2. Centralization Will Further the Convenience of the Parties and the Witnesses

Resolution of these common issues in a single forum will further the convenience of all parties and witnesses. *See* 28 U.S.C. §1407(a). Because the Related Actions are similar, if not identical, in allegations and factual questions, the plaintiffs in these actions will require depositions of the same persons and discovery of the same documents. Centralization and transfer will mitigate these problems by enabling a single judge to manage discovery and the parties to coordinate their efforts. This will reduce litigation costs and minimize inconvenience to the parties and witnesses, to

the benefit of all litigants, third parties, and the courts.  *See In re Enfamil Lipil Mktg. and Sales Practices Litig.*, 764 F. Supp. 2d 1356, 1357 (J.P.M.L. 2011).

### 3. Centralization Will Promote the Just and Efficient Conduct of the Related Actions

Centralization and transfer will also promote the just and efficient resolution of the Related Actions by eliminating the risk of duplicative discovery and the related threat of repetitive and inconsistent pretrial rulings.  Discovery will be more effectively and efficiently managed, while the resources of the parties, attorneys, and judicial system are conserved. Centralization is therefore necessary to prevent inconsistent pretrial rulings on many central issues, which would present substantial problems because of the consistency in factual and legal allegations between the Related Actions.  *See In re LLRice 601 Contamination Litig.*, 466 F. Supp. 2d 1351, 1352 (J.P.M.L. 2006).

Furthermore, this Panel has noted that data privacy or data breach cases are particularly appropriate actions for transfer and coordination pursuant to 28 U.S.C. §1407.  *See In Re Zappos.Com, Inc., Customer Data Security Breach Litig.*, MDL No. 2357 (transferring nine actions); and *In Re: Sony Gaming Networks And Customer Data Security Breach Litig.,* MDL No. 2258 (transfer of 18 original actions and 43 related actions to forum where defendant was based).

### B. The District of Minnesota Is the Most Logical, Efficient, and Convenient Venue for the Constituent Cases

The District of Minnesota is an appropriate transferee forum based upon the factors the Panel considers, including: the experience, skill, and caseloads of the available judges; number of cases pending in the jurisdiction; convenience of the parties; location of the witnesses and evidence; and the minimization of cost and inconvenience to the parties. *See, e.g., In re the Regents of the University of California*, 964 F.2d 1128, 1136 (Fed. Cir. 1992); *In re Wheat Farmers Antitrust Class Action Litig*., 366 F.Supp. 1087, 1088 (J.P.M.L. 1973); ANNOTATED MANUAL OF COMPLEX LITIGATION (FOURTH) §20.131, at 303-304 (2010). Of the factors the Panel considers when

4

determining the transferee forum, experience, number of pending cases, and available resources weigh heavily in favor of transferring all related cases to the District of Minnesota.

Target's headquarters is located in Minneapolis, Minnesota and the relevant witnesses and documents will be located there. Moreover, importantly, Judge Paul A. Magnuson, an experienced jurist with significant MDL experience, is well-positioned to preside over the coordinated Related Actions, and the District of Minnesota has demonstrated in other MDL proceedings that it has the necessary resources to handle the coordinated litigation of the Related Actions.

### 1. The District of Minnesota Serves the Convenience of the Parties and Witnesses

First and foremost, transfer of all actions to the District of Minnesota furthers the convenience of the parties and witnesses because Target is headquartered there, and it is the location where discovery related to the security breach is likely to be. *See In re Schnuck Markets, Inc., Customer Data Sec. Breach Litig.*, MDL No. 2470, 2013 WL 5670861 (J.P.M.L. Oct. 18, 2013) (finding transferee district appropriate where defendant's headquarters sat in that district); *In re Sony Gaming Networks and Customer Data Security Breach Litig.*, 802 F. Supp. 2d 1370, 1371 (J.P.M.L. 2011) (finding transferee district where defendant was based appropriate noting "discovery related to the data breaches, may be located in this district," and its "employees who may have relevant knowledge of the breaches may also be found"); *See also In re H & R Block IRS Form 8863 Litigation,* MDL No. 2474, 2013 WL 5596032, at *1 (J.P.M.L. Oct. 10, 2013); *In re Zappos.com, Inc., Customer Data Security Breach Litig.*, 867 F. Supp. 2d 1357, 1358 (J.P.M.L. 2012) (same); *In re RBS Worldpay, Inc., Customer Data Security Breach Litig.*, 626 F. Supp. 2d 1322 (J.P.M.L. 2009) (same). Because Target is headquartered in Minneapolis, Minnesota, the District of Minnesota will likely be the location of Target's employees responsible for the security of its payment systems and

other potentially relevant documents and witnesses. It would serve the convenience of the parties and witnesses to litigate where evidence is likely to be located.

In addition, the Minneapolis/St. Paul area offers a convenient and affordable location for the parties. The Minneapolis-St. Paul International Airport ranks 16th in the nation in the number of travelers served with over 400,000 landings and takeoffs annually. *See* http://www.mspairport.com/about-msp.aspx (last accessed on January 30, 2014.) It is a central hub for multiple airlines, providing direct flights throughout the day to destinations across the country. As a major metropolitan area, Minneapolis-St. Paul has adequate hotel rooms within easy walking distance of the courthouse. In addition, the District of Minnesota is a geographically centralized location for the parties.

The Panel in the past has recognized that the District of Minnesota is an appropriate MDL transferee court. In *In re Baycol Prods. Liab. Litig.*, MDL No. 1431, the Panel observed in transferring the *Baycol* MDL to the District of Minnesota that the District is "a major metropolitan court that i) is centrally located, ii) is not currently overtaxed with other multidistrict dockets, and iii) possesses the necessary resources, facilities, and technology to sure-handedly devote the substantial time and effort to pretrial matters that this complex docket is likely to require." *In re Baycol Prods. Liab. Litig.*, 180 F. Supp. 2d 1378, 1380 (J.P.M.L. 2001); *See also In re Stryker Rejuvenate, ABG II Hip Implant Prods. Liab. Litig.,* 949 F. Supp. 2d 1378 (J.P.M.L. 2013) (finding the District of Minnesota "offers a relatively accessible and geographically central forum that enjoys favorable docket conditions"); *In re Vehicle Tracking and Sec. System ("844) Patent Litig.,* 807 F.Supp.2d 1380 (J.P.M.L. 2011) ("this readily accessible district is near the headquarters of several suppliers of allegedly infringing products, relevant documents and witnesses likely will be found there").

### 2. The District of Minnesota Is Well-Positioned to Efficiently Adjudicate the Coordinated Actions

As previously noted in plaintiff Scott G. Savedow's response (ECF No. 48 at 6-7), the District of Minnesota has the resources and capacity that the coordinated docket will require. Indeed, the Panel's website shows that there are only six MDL actions currently assigned to the district. *See* http://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-January-15-2014.pdf (last accessed on January 30, 2014). And any burden on the district posed by multi-district litigation assignments is decreasing. One MDL has just a single case pending. *Id*. Two other assignments appear close to conclusion. *See* http://www.mnd.uscourts.gov/MDL-Wholesale/orders.shtml (last accessed on January 30, 2014); http://www.mnd.uscourts.gov/MDL-Levaquin/Pretrial_Minutes/2014/2014-0122-Status-Conference.pdf (last accessed on January 30, 2014). So, the District of Minnesota, unlike many of the other proposed venues, will not disproportionately bear the burden of an assignment, and presently is at full strength to marshal the resources to supervise this litigation.

For example, were the cases transferred to another district where Related Actions have been filed, the Northern District of Illinois, that venue would disproportionately bear the brunt of yet another MDL assignment (having already 16). *See* http://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-January-15-2014.pdf (last accessed on January 30, 2014). The Panel has considered the number of pending MDLs in respective districts in rendering decisions on transfer. *See In re Groupon*, *Inc., Mktg. and Sales Practices Litig.,* 787 F. Supp. 2d 1362, 1364 (J.P.M.L. 2011) (ordering transfer to a "relatively underutilized transferee district"); *In re Lending Tree, LLC, Customer Data Security Breach Litig.*, 581 F. Supp. 2d 1367, 1368 (J.P.M.L. 2008) (ordering transfer to a district that "has the capacity to handle this docket and, in the past, has been underutilized as a transferee district"); *In*

re Panacryl Sutures Prods. Liab. Litig.*, 572 F. Supp. 2d 1375, 1376 (J.P.M.L. 2008) (same). The District of Minnesota's MDL docket conditions favor transfer there.

Moreover, Judge Magnuson, who currently presides over the Related Actions now pending in the District of Minnesota, has more than 30 years of experience as a federal judge and possesses the background necessary to effectively and efficiently preside over the coordinated action. *See, e.g., In re Tri-State Water Rights Litig.,* 481 F. Supp. 2d 1351, 1353 (J.P.M.L. 2007). Indeed, the Panel has acknowledged this by sending eight multidistrict cases to Judge Magnuson's court. *See In re Nat'l Arb. Forum Trade Pracs. Litig.*, MDL No. 2122; *Tri-State Water*, MDL No. 1824; *In re Viagra Prods. Liab. Litig.*, MDL No. 1724; *In re Operation of the Mo. River Sys. Litig.*, MDL No. 1555; *In re Monosodium Glutamate Antitrust Litig.*, MDL No. 1328; *In re Lutheran Brotherhood Variable Ins. Prods. Co. Sales Practices Litig.*, MDL No. 1309; *In re Piper Funds Inc., Institutional Gov't Income Portfolio Sec. Litig.*, MDL No. 1047; *In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*, MDL No. 1001. The District of Minnesota, possessing the capacity and the specific judicial resources that this complex docket will require, is well-positioned and situated to accept transfer of the Related Actions**.**

### 3. Movants' Arguments for Transfer to Districts Other Than the District of Minnesota Are Not Warranted Under 28 U.S.C. §1407

Plaintiff in the *Lagarde* Action seeks transfer to the Middle District of Louisiana or, alternatively, to the Eastern District of Louisiana. (ECF No. 1-1) In support, *Lagarde* merely recites that the Middle District and the Eastern District of Louisiana are both "convenient" forums that have experience in handling MDL-type litigation. While these arguments may generally be applicable for certain cases where the facts and events occurred in Louisiana, there is no specific argument made why these actions against Target, a Minnesota corporation, should be transferred to either District. Likewise, plaintiffs in the *Rothschild* Action seek to transfer the Related Actions to the District of

8

Utah (ECF No. 4-1).  The plaintiffs in *Rothschild* point to no specific facts, other than the fact that they have filed an action in the District.  However, the fact that two actions are now pending does not demonstrate that any of the factors which the Panel considers in centralizing the litigation to a specific district have been met.

### III. CONCLUSION

The District of Minnesota presents a logical choice for the Panel.  A number of parties agree that it is the most logical, efficient, and convenient venue for these cases.  For the reasons set forth herein, Putnam respectfully requests that the Panel transfer the Related Actions to the Honorable Paul A. Magnuson of the District of Minnesota for coordinated pretrial proceedings.

DATED:  January 30, 2014	Respectfully submitted,

SCOTT+SCOTT, Attorneys at Law, LLP

/s/ Joseph P. Guglielmo
Joseph P. Guglielmo
Joseph D. Cohen
The Chrysler Building
405 Lexington Avenue, 40th Floor
New York, NY 10174
Tel.: (212) 223-6444
Fax: (212) 223-6334
jguglielmo@scott-scott.com
jcohen@scott-scott.com

David R. Scott
Stephen J. Teti
156 South Main Street, P.O. Box 192
Colchester, CT 06415
Tel.: (860) 537-5537
Fax: (860) 537-4432
david.scott@scott-scott.com
steti@scott-scott.com

ZIMMERMAN REED, PLLP
J. Gordon Rudd, Jr.
Brian C. Gudmundson
1100 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Tel: (612) 341-0400
Fax: (612) 341-0844
gordon.rudd@zimmreed.com
brian.gudmundson@zimmreed.com

*Attorneys for Putnam Bank*

10